**HOLLYWOOD CALLING, Appellant,**

v.

**PUBLIC UTILITY COMMISSION OF TEXAS, Appellee.**

**No. 3–89–067–CV.**

Court of Appeals of Texas, Austin.

March 13, 1991.

Rehearing Overruled April 10, 1991.

Dick Terrell Brown, Austin, for appellant.

Steven Baron, Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

PER CURIAM.

Appellant Hollywood Calling filed suit in the district court of Travis County seeking declaratory relief as to the validity of substantive rule 23.32(b)(7) and (8), 16 Tex.Admin.Code § 23.32(b)(7), (8) (West Sept. 1, 1988), of appellee Public Utility Commission. *See* Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 12 (Supp.1991). The district court concluded, in pertinent part, that rule 23.-32(b)(7) and (8) is valid and permanently enjoined Hollywood Calling from violating

rule 23.32(b)(7). We will reverse the judgment of the district court.

The portion of rule 23.32(b)[1] at issue prohibits the use of automatic dial announcing devices (ADADs) to advertise "Dial 976" telephone services ("976" service). By "976" service, a telephone company provides telecommunications, billing, and collection services for information providers or sponsors, such as Hollywood Calling. Customers dial a number beginning with "976" to hear messages a sponsor provides by way of telephone company lines. The telephone company bills the customers, collects the charges, subtracts a handling fee, and remits the remainder of the charges to the sponsor. ADADs are machines that can be connected to a telephone line and programmed to dial telephone numbers automatically. When a person answers the telephone, the ADAD plays a recorded message. Hollywood Calling uses ADADs in Houston, Dallas, Fort Worth, and San Antonio to advertise its "976" services.

In its first point of error, Hollywood Calling contends that the district court erred in concluding that the Commission did not exceed its authority under the Public Utility Regulatory Act (PURA), Tex. Rev.Civ.Stat.Ann. art. 1446c, § 87B (Supp. 1991), in adopting rule 23.32(b)(7) and (8). Section 87B defines the term "automatic dial announcing device" and provides that a "person may not use an automatic dial announcing device unless" he meets the enumerated criteria.[2]

---

1. Rule 23.32 provides, in pertinent part:
(b) Requirements for use. The following requirements are imposed on the user of an automatic dial announcing device:
(7) no cross-promotions or references shall be made to any sponsor-provided information service where the caller will incur a charge to place the call. A sponsor-provided information service is defined as any recorded announcement, recorded interactive program, live announcement, or live program, for which the local exchange carrier (LEC) either bills an end-user an amount predetermined by the sponsor or offers billing information in order that the sponsor can bill the end-user. This is not intended to apply to toll-related services provided by the LEC.
(8) a violation of any portion of this section shall be cause for disconnection pursuant to

paragraph (c) of this section and subject the user to prosecution for a Class C misdemeanor as set forth in the Public Utility Regulatory Act, § 87B(f).

2. Section 87B provides, in pertinent part:
(b) A person may not use an [ADAD] unless:
(1) the person has obtained a permit from the commission and given written notice specifying the type of device to each telecommunications utility over whose system the device is to be used;
(2) the device is not used for random number dialing or dial numbers determined by successively increasing or decreasing integers;
(3) the message conveyed by the device, or a message delivered by a human, states the nature of the call and the identity of the person, company, or organization making the call;

■ The rule at issue is presumed valid; Hollywood Calling had the burden to show that the Commission did not have the statutory authority to promulgate it. *Browning–Ferris, Inc. v. Texas Dept. of Health,* 625 S.W.2d 764, 767 (Tex.App.1981, writ ref'd n.r.e.). A rule may not impose additional burdens, conditions, or restrictions beyond or inconsistent with the statutory provisions. *Bexar County Bail Bond Board v. Deckard,* 604 S.W.2d 214, 216 (Tex.Civ.App.1980, no writ). The determinative factor as to whether the Commission exceeded its authority is whether the rule is in harmony with the general objectives of the statute. *Gerst v. Oak Cliff Savings and Loan Ass'n,* 432 S.W.2d 702, 706 (Tex. 1968); *State Board of Insurance v. Deffebach,* 631 S.W.2d 794, 798 (Tex.App.1982, writ ref'd n.r.e.). In making this determination, the reviewing court must look not only to a particular provision of the act but to all applicable provisions. *Gerst,* 432 S.W.2d at 706.

In rejecting Hollywood Calling's reliance solely on § 87B, the Commission argues that PURA §§ 2, 16, and 18 provide authority for the adoption of rule 23.32(b)(7) and (8). Section 2 provides:

> This Act is enacted *to protect the public interest in the rates and services of public utilities....* The purpose of this Act is to establish a comprehensive regulatory system which is adequate to the task of *regulating public utilities* as defined by this Act, to assure rates, operations and services which are just and reasonable to the consumers and to the utilities.

(Emphasis added.) Section 16(a) relates to the Commission's general powers and provides:

> The commission has the general power *to regulate and supervise the business of every public utility* within its jurisdiction and to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction. The commission shall make and enforce rules reasonably required in the exercise of its powers and jurisdiction....

(Emphasis added.) Section 18 refers expressly to *telecommunications utilities* and provides, in pertinent part:

> (a) It is the policy of this state to protect the public interest in having adequate and efficient telecommunications service available to all citizens of the state at just, fair, and reasonable rates. The legislature finds that the telecommunications industry through technical advancements, federal judicial and administrative actions, and the formulation of new telecommunications enterprises has become and will continue to be in many and growing areas a competitive industry which does not lend itself to traditional public utility regulatory rules, policies, and principles; and that therefore, the public interest requires that new rules, policies, and principles be formulated and

(4) the device disconnects from the called person's line not later than 10 seconds after the called person hangs up;
(5) for calls terminating in the State of Texas, the device is not used to make a call (a) on a Sunday before 1:30 p.m. or after 9 p.m., or before 9 a.m. or after 9 p.m. on a weekday or a Saturday, when the device is used for solicitation; ....
(c) A telecommunications utility may disconnect or refuse to connect service to a person using or intending to use an [ADAD] if the utility determines that the device is not capable of disconnecting from a called party's line as required by this section or that the device would cause or is causing network harm. The telecommunications utility shall disconnect service to a person on a determination by the commission or a court that the person is violating this section, and may reconnect service to the person only on a determination by the commission that the person will comply with this section. The utility shall give notice to the person using the device of its intent to disconnect service not later that the third day before the date of the disconnection, except that if the device is causing network congestion or blockage, the notice may be given on the day before the date of disconnection....
(e) An application for a permit under this section to use one or more [ADADs] must be accompanied by a fee in a reasonable amount calculated to cover the enforcement cost to the commission not to exceed $500, as determined by the commission....
(f) A person who operates an [ADAD] in violation of this section commits an offense. An offense under this section is a Class C misdemeanor.

applied to protect the public interest and to provide equal opportunity to all telecommunications utilities in a competitive marketplace. It is the purpose of this section to grant to the commission the authority and power under this Act to carry out the public policy herein stated.

■ Clearly, the preceding provisions vest the Commission with a broad grant of power to regulate public utilities, including telecommunications utilities. *See Amtel Communications v. Public Utility Comm'n of Texas,* 687 S.W.2d 95, 99–100 (Tex.App.1985, no writ). Rule 23.32(b), however, imposes restrictions on a "person," a "user of an automatic dial announcing device." In § 87B, the legislature imposed restrictions on a user of an ADAD. Rule 23.32(b) parts (1) through (6), which are not at issue, track the statutory language. In part seven, however, the Commission purports to place an additional restriction on the ADAD user. Notwithstanding that rule 23.32(b)(7) may harmonize with the statute's general objective to protect the public interest, we find no general grant of authority whereby the Commission may regulate a user of a telecommunication service. *See Kelly v. Industrial Accident Board,* 358 S.W.2d 874 (Tex. Civ.App.1962, writ ref'd); *Bexar County,* 604 S.W.2d at 217–18.

■ The Commission responds that the necessary authority is found in § 87B(b)(1) which requires a person to obtain a permit from the Commission. Again, we find no grant of authority in § 87B or other provisions of PURA whereby the Commission is given authority to impose conditions on the issuance of the permit, other than the provision for an application fee set out in § 87B(e).

We need not address any contention Hollywood Calling raises as to the validity of rule 23.32(b)(8) which provides:

a violation of any portion of this section shall be cause for disconnection pursuant to paragraph (c) of this section and subject the user to prosecution for a Class C misdemeanor as set forth in the Public Utility Regulatory Act, § 87B(f).

In promulgating rule 23.32(b)(7), the Commission expanded the number of actions which subject the user to disconnection or to criminal prosecution. Having determined that rule 23.32(b)(7) is invalid, rule 23.32(b)(8) refers only to those actions listed in PURA § 87B and rule 23.32(b)(1) through (6). The first point of error is sustained.

Because of our conclusion that the rule is invalid, we need not address Hollywood Calling's remaining points of error.

The judgment of the district court is reversed and the injunction dissolved. Judgment is rendered that Rule 23.32(b)(7) is invalid as adopted without statutory authority.